## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MIGUEL A. DAVILA,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:11-1092** |
| **v.** | : | **(MANNION, D.J.)** |
| | | **(SCHWAB, M.J.)** |
| **COMMONWEALTH OF PENNSYLVANIA,** *et. al.,* | : | |
| | : | |
| **Defendants** | : | |
| | : | |

### MEMORANDUM[1]

The plaintiff's claims all arise from his DUI arrest, prosecution, guilty plea, and incarceration. On May 8, 2009 Miguel A. Davila was involved in a car accident with a tractor-trailer. Several police officers who responded to the accident found Mr. Davila to be incoherent and suspected he was drunk. He was arrested and charged with Driving Under the Influence. Over one year later, the plaintiff plead guilty in front of Lackawanna Court of Common Pleas Judge Michael Barasse. His conviction and sentence has been upheld by the Pennsylvania Superior Court and the Pennsylvania Supreme Court. The claims relevant to these motions to dismiss involve allegations that the defendants violated Title II of the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) during his DUI criminal proceedings. The court

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

finds the plaintiff's complaint both fails to state a claim for which relief can be granted and is a collateral attack on the voluntariness of his guilty plea that is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). As such, the defendants' motions to dismiss are granted.

The court recognizes that several other defendants raised the *Heck* issue in an earlier motion to dismiss. (Doc. 25, 29). Magistrate Judge Smyser (now retired) to whom this matter was previously referred filed a report recommending that motion be denied without addressing whether *Heck* barred some of the plaintiff's claims. (Doc. 37). The report was subsequently adopted by another district judge while the case was still assigned to him. (Doc. 38). Today's decision is inconsistent with that prior ruling.

"A judge need not follow a previous decision on the same issue in the same case if unusual circumstances exist that permit a different conclusion." *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1982). A judgment may be so altered or modified in order to "correct a clear error of law or fact or to prevent a manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A motion for reconsideration is proper when it "addresses only factual and legal matters that the Court may have overlooked." *Glendon Energy Co. v. Borough of Glendon*, 836 F.Supp. 1109, 1122 (E.D.Pa. 1993).

The court is compelled to revisit the *Heck* issue raised earlier, but not fully discussed and analyzed in the court's prior rulings. The plaintiff and remaining defendants are directed to file briefs by **April 18, 2014** discussing the implication of *Heck* as to the ADA and RA claims arising from the criminal hearings and proceedings before the Lackawanna County Court of Common Pleas.

## I.    BACKGROUND

Presently before the court is Judge Schwab's report and recommendations, (Doc. 185), to which the plaintiff has filed an objection. (Doc. 186). The plaintiff's underlying amended complaint alleges various deprivations of his rights under the ADA and the RA. (Doc. 8). For the reasons discussed below, the court will **ADOPT IN SUBSTANTIAL PART** and **NOT ADOPT IN PART** Judge Schwab's report and recommendations.

## II.    FACTUAL BACKGROUND

The facts in the report and recommendation essentially summarize the time line of events laid out in the plaintiff's lengthy amended complaint. (Doc. 6). As such, the court will briefly recount the finding of facts as contained in Judge Schwab's report. (Doc. 185).

The plaintiff is mentally disabled and since 2009 has suffered from bi-

3

polar disorder, post-traumatic stress disorder, and depression. In May 2009 he was involved in a car accident and was subsequently charged with driving under the influence (DUI). Upon the start of the criminal proceedings, Defendant John Joseph Lawler was appointed as his counsel. According to the plaintiff, Attorney Lawler conspired with the Lackawanna District Attorney's Office and coerced him into waiving his preliminary criminal hearing. Sometime in May 2010, he requested his attorney file a motion to dismiss because his charges were pending for longer than one year in alleged violation of Pa.R.Crim.P. 600. He alleges no such motion was ever filed.

Originally, the plaintiff had a hearing scheduled for September 13, 2010. Four days before that hearing his attorney called him and told him that the hearing was to be held the next day, September 10.The plaintiff had allegedly arranged to have a State Certified Mental Health Peer Specialist present at the September 13 hearing, but was unable to bring him /her to the September 10 hearing. When he arrived at court, the plaintiff alleges his attorney coerced him into pleading guilty. He claims he was not sentenced that day, but was rather "arrested" and ordered to serve 90 days of incarceration. He alleges that Judge Barasse and his attorney both failed to notify him of his right to appeal. He was then transported to the Lackawanna County Prison to serve his 90-day term.

Approximately three months later, the plaintiff appeared again at the

4

Lackawanna Court of Common Pleas for sentencing. Judge Barasse, however, postponed the sentencing and ordered the plaintiff to undergo a psychological and psychiatric evaluation at a state correctional facility. Again, he avers that neither the Judge nor his attorney informed him of his right to appeal. He spent 21 days in the Lackawanna County Prison before he was transferred, pursuant to the court order, to SCI-Camp Hill for evaluation. At SCI-Camp Hill, he claims he was segregated from the prison population because of his mental disability and was held for longer than 60 days in alleged violation of Pa.R.Crim.P. 702(b). That rule requires a psychological evaluation occur within 60 days of the court order. The plaintiff further claims that his 90-day incarceration should have ended on December 9, 2010 and his continued confinement violated Pa.R.Crim.P. 704 because he was not sentenced within 90 days of his plea.

The plaintiff filed a *pro se* motion to dismiss for lack of a speedy trial, but he alleges the motion was improperly docketed and was never ruled upon. In early April 2010, plaintiff was sentenced by Judge Barasse to 90 days of incarceration and assessed various fees and fines, but he was not given any credit for the 210 days served prior to the imposition of the sentence. He was released the day after his sentencing and placed on house arrest for 90 days. The Pennsylvania Superior Court affirmed the plaintiff's guilty plea, conviction, and sentence*, Commonwealth v. Davila*, 43 A.3d 515 (Pa. Super. 2012), and

the Pennsylvania Supreme Court denied his petition for allowance of a further appeal, *Commonwealth v. Davila*, 616 Pa. 633 (2012).

Central to the pending report and recommendation are the plaintiff's allegations that the defendants violated his rights under the American's with Disabilities Act (ADA) and the Rehabilitation Act (RA). He claims the defendants violated these rights by: denying him the benefit of a State Certified Mental Health Peer Specialist at his criminal proceedings to effectuate proper communication between him and the court; by prolonging his sentence without proper cause; by failing to alert him to his rights and the development of his defense; by providing different services to disabled individuals than provided to non-disabled individuals; by failing to provide sufficient notice of changes in the date and time of various proceedings; by denying him the right to participate in his defense; by denying him necessary mental health treatment within his community; by sending him to a state correctional institution to undergo an evaluation rather than a local center within the community; by failing to have an employee to ensure compliance with the ADA and RA; by failing to provide a grievance procedure for alleged ADA and RA violations; and by segregating him because of his disability while incarcerated.

## III.    PROCEDURAL BACKGROUND

The present case has had an extensive procedural history that is well documented on the docket and in Judge Schwab's report and recommendation. (Doc. 185). The pending motions relevant to this ruling are the Lackawanna County Court of Common Pleas's and the Lackawanna County Court Administrator's Office's motions to dismiss. (Doc. 108, 133). The Lackawanna Court of Common Pleas made its motion on December 3, 2012 and filed a brief in support on December 10, 2012. (Doc. 112). The Lackawanna County Court Administrator's Office motion was made on March 19, 2013 and brief in support was filed on April 2, 2013. (Doc. 146). The plaintiff filed briefs in opposition respectively on December 6, 2012, (Doc. 109), and July 26, 2013. (Doc. 160).

The plaintiff filed several motions, including: (1) a motion for an entry of default as to the Lackawanna County Court Administrator's Office; (2) a motion for default judgement as to the same defendant; and (3) a motion for a preliminary injunction. (Doc. 125, 127, 182). Both motions related to the default were filed on March 14, 2013 and briefs in support were filed that same day. (Doc. 126, 128). The Lackawanna County Court Administrator's Office filed a brief in opposition to the plaintiff's motions for default on March 15, 2013. (Doc. 130). The plaintiff's motion for a preliminary injunction was filed on February 21, 2014 and a brief in support was filed that same day.

7

(Doc. 183). No brief in opposition has yet been filed.

Judge Schwab filed her report and recommendation on February 28, 2014, (Doc. 185), recommending the following dispositions: 1) the plaintiff's motions for entry of default, entry of default judgment, and for a preliminary injunction be denied; 2) the motions to dismiss be granted in part and denied in part; and 3) the case be remanded to her for further proceedings. The plaintiff has filed an objection. (Doc. 186). The case is now ripe for the court's decision.

## IV.    STANDARD OF REVIEW

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); *Brown v. Astrue,* 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (*citing United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the

recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also *Univac Dental Co. v. Dentsply Intern., Inc.,* 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (*citing Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may adopt, not adopt, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

The defendants' motions to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal

9

evidence of [necessary elements]" of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before

dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000)*. "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004)*.

## V.   DISCUSSION

### A.   The Plaintiff's Motions

As an initial matter, the plaintiff did not file any objections with regard to the denial of his motions for entry of default, for default judgment, and for a preliminary injunction. Given the plaintiff sought to enter default against the Lackawanna County Court Administrator's Office, a party who has now been properly served, filed a notice of appearance, (Doc. 129), and opposed the motions related to default, there is no basis to enter default judgment. The motions for entry of default and for default judgement are denied.

Turning to the motion for a preliminary injunction, the plaintiff's motion and brief in support fail to demonstrate that he will likely be successful on the merits and does not show how he will suffer irreparable harm if the injunction is not granted. Although some of his claims survived various prior screening mechanisms and motions to dismiss, Judge Schwab correctly noted that this

is not tantamount to showing a reasonable likelihood of success on the merits. *Miller v. Mitchell*, 598 F.3d 139, 147 (3d. Cir. 2010). For those reasons, the plaintiff's motion for a preliminary injunction is denied.

### B.    **The Defendants' Motions**

I.    The Criminal Proceedings with the exception of the September 10, 2010 Hearing

The plaintiff objects to Judge Schwab's recommendation that his claims related to his numerous criminal hearings be dismissed. The objection states "that Plaintiff was forced to participate in state court hearings and services without mental health advocacy on more than one occasion, not just the September 2010 hearing." (Doc. 187). The plaintiff's amended complaint, which is 79 pages long and contains a plethora of legal and factual arguments, fails to demonstrate how the policies or procedures employed during these other hearings violated the ADA. All of the allegations, save for those regarding the September 10 hearing, are general and vague. The court agrees with the plaintiff's general proposition that courts are bound to reasonably accommodate those with mental disabilities when they have sufficient knowledge of any such disabilities. *Tennessee v. Lane*, 541 U.S. 509, 533 (2004). However, a bare invocation of Title II of the ADA is insufficient to  survive a motion to dismiss. *Lenhart v. Pennsylvania*, 528 F.

App'x 111, 114 (3d Cir. 2013).

A plaintiff is "required to allege that he was unable to meaningfully participate in his cases because he did not receive accommodations." *Muhammad v. Court of Common Pleas of Allegheny County, Pa.*, 483 F. App'x 759, 764 (3d Cir. 2012). The plaintiff only alleges that his hearing scheduled for September 13, 2010 was changed at the last minute to September 10, thereby depriving him of having a mental health professional with him in court. There are no allegations that any other hearing was changed or rescheduled. Moreover, the plaintiff's allegations that his sentence or detention violated various rules of Pennsylvania Criminal Procedure do not bring those actions within the purview of the ADA or the RA. Given the allegations in his complaint, Judge Schwab's determination is accurate. The motion to dismiss is granted as to those claims.

II.    The September 10, 2010 Hearing

The report further concluded that the plaintiff's claims of violation of the ADA based on failure to accommodate during the September 10, 2010 hearing and under the integration mandate should proceed. Neither party raised the issue as to whether the plaintiff's complaint is a collateral attack on his criminal conviction, implicating *Heck*. The court finds that the plaintiff's request for relief would run afoul of *Heck*.

The central holding of *Heck* is that civil actions, specifically 42 U.S.C.

13

§1983 claims, are not the appropriate vehicles through which to challenge valid criminal convictions. 512 U.S. at 486. The state appellate courts and a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 are the proper avenues for challenging such convictions.  "[S]tate prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that *necessarily implies the unlawfulness of the State's custody*." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2004)(emphasis added). Other civil actions that would necessarily question the validity of a state criminal conviction are barred under that same reasoning. *See Platts v. Buchanan*, 2013 WL 4810486, *7 (W.D.Pa. Sept. 9, 2013)*("While Heck specifically addressed civil rights actions under Section 1983 in which damages were sought, the rationale of Heck has not been limited to such civil rights cases only.").

"To establish a violation of Title II of the ADA, a plaintiff must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Muhammed v. Court of Common Pleas of Allegheny County, Pa.*, 483 F. App'x 759, 762 (3d Cir. 2012)(citing 42 U.S.C. §12132). The *Muhammed* court went on to explain that

the third element, requiring the plaintiff show such discrimination was "by reason of his disability," is tantamount to causation. *Id.* at 764. "[T]he plaintiff must demonstrate that, but for the failure to accommodate, he would not be deprived of the benefit he seeks." *Id.* Here, the plaintiff would have to demonstrate that the defendants failed to accommodate his need for State Certified Mental Health Peer Specialist to facilitate his communication with the court during his guilty plea.

In Pennsylvania, a valid guilty plea must be voluntary, knowing, and intelligent based on the individual circumstances of each case and the needs of the defendant. *Commonwealth v. Rodgers*, 350 A.2d 815, 817 (Pa. 1976). Although not exclusive, the Pennsylvania Supreme Court has pointed out several factors that contribute to a valid plea:

> (1) an understanding what specific acts the defendant is admitting and whether they make out the crime charged; (2) an understanding of the rights given up by choosing not to put the state to its proof; and (3) an understanding of the nature and extent of punishment which may be imposed for the crime which the defendant admits committing.

*Id.* However, a person who is mentally incompetent is neither fit to stand trial, nor able to make a voluntary, knowingly, and intelligent guilty plea. *Commonwealth v. Harris*, 243 A.2d 408, 409 (Pa. 1968). If such a person pleads guilty to a crime, the plea is null and void by reason of his limited mental capacity. *Id.*

This issue has not been squarely addressed within the Third Circuit, but

15

several other Federal District Courts have discussed similar situations to the one at bar. *Browdy v. Karpe*, 2004 WL 2203464, (D.Conn. Sept. 20, 2004) revolves around a set of parallel circumstances. After pleading guilty in state court and having his convictions upheld, Mr. Browdy filed suit in federal court pursuant to 42 U.S.C. §1983 and Title II of the ADA. Specifically, he alleged that his state-appointed defense attorney should have requested a competency hearing prior his entering a plea of guilty. *Id.* at *2. The underlying issue was whether his mental impairment rendered his plea involuntary. That court determined any analysis of the impairment, the attorney's strategy, or the voluntariness of the plea "necessarily would call into question the validity of Browdy's conviction and sentence." *Id.* at *8. The ADA claim would require the court to probe the validity of his conviction, running afoul of *Heck*.

In *Deatherage v. Stice*, 2006 WL 249664 (W.D. Ok. Feb. 1, 2006), the plaintiff brought a claim under the ADA against his state-appointed defense attorney. He alleged the lawyer provided ineffective assistance of counsel and coerced him into pleading because he suffered from HIV/AIDS. The plaintiff argued that he suffered discrimination in the form of a coerced guilty plea because of his disability, violating the ADA. *Id.* at *4. Despite these allegations, the plaintiff only sought monetary damages and did not seek to have his state prison term vacated, reversed, or reduced. *Id.* That court,

relying on *Browdy*, held that the plaintiff's challenge brought pursuant to the ADA would call into question the validity of his state criminal convictions. *Id.* at *9. It would require the federal court to essentially evaluate the voluntariness of his guilty plea through an ADA claim. As such, *Heck* barred that claim. *Id.*

In *Skinner v. Switzer*, 131 S.Ct. 1289 (2011), the Supreme Court clarified the implications of *Heck* in terms of seeking evidence for further testing. In that case Henry Skinner, a convict in Texas, filed a §1983 action seeking the release of DNA evidence for scientific analysis. The Court discussed the implication of *Heck* when a prisoner requested access to such evidence for further review. The Court concluded that an analysis of DNA materials or other evidence may yield "exculpatory, incriminating, or inconclusive results," unlike a claim for exculpatory evidence brought pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). *Skinner*, 131 S.Ct. at 1300. When a court's determination of a civil matter "necessarily yields evidence undermining a conviction," it ranks "within the traditional core of habeas corpus and outside the province" of civil actions. *Id.* As the DNA evidence may reveal either exculpatory or inculpatory evidence, *Heck* was not implicated.

In sum, the plaintiff wants this court to decide whether he was denied the benefit of a mental health expert during his September 10 hearing where

he entered his guilty plea. He alleges that this specialist was necessary to facilitate communications between himself and the court. He further claims he was coerced into entering a plea of guilty and was not properly informed off all of his rights. Similar to *Browdy* and *Deatherage*, this court's inquiry would necessarily call into question the validity of his guilty plea in light of his alleged disability. If the plaintiff suffered such a mental condition whereby he could not effectively communicate with the court, his plea would almost certainly be invalid. This type of civil review brings this case directly into *Heck*'s realm as discussed by *Skinner. See Browdy*, 2004 WL 2203464 at *8 ("[A] decision that Attorney Karpe violated Browdy's rights under the ADA because he did not request a competency hearing and failed to ensure that Browdy was competent to enter into a plea agreement, necessarily would call into question the validity of Browdy's conviction and sentence.").

Alternatively, the court is further compelled to dismiss this claim because there is no evidence the plaintiff brought his need for a mental health specialist or the scheduling issue to the attention of the court. There is nothing in the amended complaint to show he requested his attorney file a motion to continue his case. The plaintiff's advocate was his attorney and, even liberally construing his complaint, it is unclear whether his attorney knew of the plaintiff's alleged need for a mental health specialist. The plaintiff appeared in court on several occasions including a bail modification hearing

18

on July 16, 2009, a pre-trial conference on August 28, 2009, a hearing to lift a bench warrant on August 2, 2010, and when he entered his guilty plea on September 10, 2010. ((Doc. 6, Att. 1). He does not allege he attempted to bring a mental health specialist to any of the hearings prior to September 10 or the court failed to properly accommodate him. The plaintiff could have adequately addressed his needs by requesting his attorney file a motion to continue so he could bring a mental health specialist to court. His failure to do so acts as a further bar to this claim.

The plaintiff's guilty plea, conviction, and sentence have been upheld by the Pennsylvania Superior Court. *Davila*, 43 A.3d 515. The Pennsylvania Supreme Court has denied further review. A decision as to the alleged ADA and RA violations on the day of the plaintiff's guilty plea runs headlong into *Heck* in light of his facially valid conviction. If it is determined he was entitled to have a mental health professional with him, this court would necessarily call into question whether his plea was made voluntarily, knowingly, and intelligently. *See Harris*, 243 A.2d at 409 ("And if a person who is mentally incompetent pleads guilty to a criminal indictment, the plea is a nullity."). As a habeas petition is the proper vehicle for such an argument, the plaintiff's ADA and RA claims related to the September 10 hearing fail.

III.   Other Claims Arising Under the ADA and RA

Recently the Third Circuit clarified that in order to state a claim under

19

the ADA and RA for failure to provide notice, grievance procedures, or a designated employee to coordinate the court's efforts, a plaintiff must allege some harm that springs from the defendants failures. *Stone v. New Jersey Administrative Office of the Courts*, 2014 WL 260291, *2 (3d Cir. January 24, 2104); see 28 C.F. R. §§35.106, 35.107. The plaintiff has not properly explained how these alleged omissions caused him injury. He does not claim that at the time he did not know his rights under the ADA or RA, or that such policies would have informed him of any rights. Moreover, he has not claimed that he would have filed a grievance or taken advantage of a grievance procedure. *See Stone*, 2014 WL 260291 at *2 ("[The plaintiff] has not alleged any injury from these purported violations. His arguments concerning failure to notify him adequately of his rights under the ADA, in violation of 28 C.F. R. §35.106, are unavailing for the same reasons."). As such, dismissal is appropriate with regard to these claims.

Judge Schwab also determined the plaintiff lacks standing to seek injunctive relief. The plaintiff essentially wants the court to order the Lackawanna County Court of Common Pleas to modify its policies and procedures to comply with the ADA and RA. "Even if the plaintiff has suffered a previous injury due to the defendant's conduct, the equitable remedy of an injunction is 'unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat

20

that the plaintiff will be wronged again[.]'" *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 301 (3d Cir. 2012)(quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). The plaintiff has failed to show that there is a "real or immediate threat" he will be subject to a criminal prosecution where his rights under the ADA and RA will possibly be violated. As such, any claim for injunctive relief is dismissed for lack of standing.

IV.    Attorney's Fees and Punitive Damages

The plaintiff's objection also did not contest Judge Schwab's determination that punitive damages are not recoverable under these claims brought pursuant to the ADA and RA. *Barnes v. Gorman,* 526 U.S. 181, 192 (2002). Davila is also not entitled to attorney's fees as a *pro se* litigant. *Kay v. Ehrler*, 499 U.S. 432, 438 (1991). For those reasons, any claims for punitive damages or attorney's fees are dismissed.

Finally, the plaintiff has been afforded an opportunity to amend his complaint previously. (Doc. 6). The amended complaint, as discussed earlier, is extremely long and contains a wide range of factual and legal arguments. As discussed in this court's memorandum of April 2, 2013, "The alleged failure to provide the plaintiff with additional opportunities to amend his complaint does not warrant modification of the court's most recent order. The plaintiff was afforded leave to amend his complaint, (Doc. 5), and the plaintiff indeed took advantage of the opportunity." (Doc. 144). Given the plaintiff had

an opportunity to amend and his complaint is quite voluminous, there is no basis to conclude the plaintiff would plead additional facts not already before the court. As such, the court agrees with Judge Schwab that any leave to amend would be futile. No leave to amend will be granted.

## VI.   CONCLUSION

For the reasons discussed above, Judge Schwab's report and recommendation is **ADOPTED IN SUBSTANTIAL PART** and **NOT ADOPTED IN PART**. The plaintiff's three motions are all **DENIED**. The defendants' motions to dismiss are **GRANTED**. The Lackawanna County Court of Common Pleas and the Lackawanna County Court Administrator's Office are to be terminated from this case.

An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: March 28, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2011 MEMORANDA\11-1092-03.wpd